NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1804                                      Appeals Court


COMMONWEALTH  vs.  GERALD SYLVIA.


No. 13-P-1804.

Middlesex.      October 7, 2015. - April 6, 2016.

Present:  Katzmann, Rubin, & Wolohojian, JJ.


Practice, Criminal, Plea, Sentence, Indictment.  Armed Assault
     in a Dwelling.



     Indictments found and returned in the Superior Court
Department on December 5, 2006.

     A motion for release from unlawful confinement was
considered by Edward P. Leibensperger, J., and a motion to
revise and revoke sentence was considered by Diane M. Kottmyer,
J.


     Michael A. Cioffi for the defendant.
     Crystal Lee Lyons, Assistant District Attorney, for the
Commonwealth.


     WOLOHOJIAN, J.  The defendant pleaded guilty in 2007 to

charges stemming from an incident in which he stole twenty

pounds of marijuana at gunpoint.  The plea was tendered without

an agreed sentencing recommendation.  In this consolidated

appeal from the order denying his motions to be released from unlawful restraint and to revise and revoke his sentence, the defendant contends: (1) his plea was not knowing and voluntary because, in violation of Mass.R.Crim.P. 12(c)(2)(A), as appearing in 442 Mass. 1513 (2004),[1] he was not informed he could withdraw his plea if the sentence exceeded the Commonwealth's sentencing recommendation, (2) his plea was not knowing and voluntary because he had a "plea agreement" with the previous judge sitting in the session and that agreement was "breached," (3) his plea was not intelligently made because there was insufficient evidence before the grand jury to support the charge of armed assault in a dwelling, and (4) being an armed career criminal is not a freestanding crime and; therefore, it was error to impose a separate sentence for it. We agree with the defendant that there is no freestanding crime of being an armed career criminal and, therefore, a separate sentence should not have been imposed. We accordingly remand the matter to the Superior Court to implement the procedure followed in Commonwealth v. Miranda, 441 Mass. 783 (2004), and for resentencing on the firearm charge. We otherwise affirm.

---

[1] We deal here with the version of rule 12 in effect at the time of the plea in 2007, not with the current version of the rule that took effect on May 11, 2015, as appearing in 470 Mass. 1501 (2015). Accordingly, all references to the text of rule 12 in this opinion are to the earlier version of the rule.

Background.  The evidence before the grand jury showed the following.  Anthony Theriault agreed to sell twenty pounds of marijuana to Jemail Morris.  When Theriault arrived at the designated meeting spot, Morris was not alone.  Instead, Morris was accompanied by the defendant, whom Morris introduced as supplying the purchase money.  After overcoming his initial surprise and hesitation, Theriault agreed to proceed with the transaction.  All three men got into a car driven by the defendant and went to Theriault's apartment.

Once there, Theriault placed two large green garbage bags of marijuana on the kitchen table for Morris's inspection.  Meanwhile, the defendant drew a gun and, looking Theriault in the eye, stated, "You know what this is.  Let's just get this over with.  Get down on the floor."  Morris put on blue rubber gloves.  Fearing for his life, Theriault begged the men to take the marijuana without harming him.  In the subsequent scuffle, Theriault was able to escape and call 911, providing a detailed physical description of the two men, and a description of their car and its license plate number.

Police located the car almost immediately and gave chase.  The defendant was driving.  When the car reached an impasse, the defendant and Morris fled on foot.  The defendant removed a pair of blue rubber gloves and pulled a firearm from his waist as he got out of the car.  A Jennings .380 caliber semiautomatic

pistol was later found in the driver's area of the car. Two large green garbage bags containing twenty pounds of marijuana were on the back seat. A backpack the defendant tossed as he ran contained duct tape, blue rubber gloves, and garbage bags. When searched at the station, six .38 special caliber bullets were found on the defendant's person. Theriault identified the defendant and Morris as the perpetrators from a photographic array.

On these facts, a grand jury returned five indictments charging the defendant with armed robbery, G. L. c. 265, § 17, armed assault in a dwelling, G. L. c. 265, § 18A, possession of a firearm, G. L. c. 269, § 10(a), possession of marijuana with the intent to distribute, G. L. c. 94C, § 32C(a), and being an armed career criminal, G. L. c. 269, § 10G(a). The latter was the subject of a separate indictment.

From the docket sheet, it appears the case was actively litigated thereafter. More specifically, the Commonwealth provided discovery and the defendant filed various discovery motions and a motion to suppress. At some point on or before November 29, 2007, the defendant and Morris advised the judge that they intended to change their pleas. On that date, the defendant filed a sentencing memorandum. Also on that date, the judge (who was then sitting in the session to which the case was assigned) held a status conference "to determine whether one or

both of the defendants wish to change their pleas." Although both the defendant and Morris stated that were prepared to plead guilty, Morris requested a delay in sentencing based on family circumstances. In addition, the Commonwealth, having learned only that day about the defendants' change in position, requested a delay in order to obtain a witness impact statement. The defendant's attorney suggested that the defendant and Morris be kept on the same schedule. The judge allowed a continuance for both defendants to December 18, 2007, noting that if the pleas were not changed on that date the case would proceed to trial.

The following exchange then occurred:

The court: "All right, I just want to be sure I keep a record of what I said I would do and my memory is what I indicated I would treat this not as a home invasion but as an armed robbery and then I looked at the guidelines and I think I indicated that I would go maybe one year under the guidelines that's my memory and I have my notes here somewhere."

The prosecutor: "I wrote down with regards to Mr. Sylvia, you said 6 to 9, Judge, and with regards to Mr. Morris, you said 8 to 12, and that is a departure slightly from the guidelines based on the reasons you just stated."

The court: "All right. Thank you for the sentencing memorandum."

That judge did not retain jurisdiction. Thus, although the change of plea occurred as anticipated on December 18, 2007, it occurred before a different judge (second judge), who was not

informed by anyone of the previous judge's sentencing views. The second judge appears only to have been told that there was no agreement regarding the plea.

We need not recite in their entirety the details of the second judge's comprehensive plea colloquy; we state only those aspects that bear on this appeal. After noting that there was no agreement regarding the plea, the following exchange occurred.

> The court: "I will impose today, on the assumption that I accept the pleas, a conditional sentence. The conditional sentence means that this is not the final sentence. The final sentence will be determined after a sentencing hearing, at which, having received a sentencing memorandum from the Commonwealth, and such sentencing materials, including memoranda and/or letters of support, things of that kind, from the defendants, and a pre-sentence report for each defendant from the Probation Department, I will then proceed to a hearing. And at the hearing, I will also hear argument from Mr. Donnelly for the Commonwealth, and from Mr. Elikann on behalf of Mr. Sylvia, and Mr. Napolitano on behalf of Mr. Morris. Each of the defendants may, if he wishes -- he's not obliged to but if he wishes -- the defendant may address the Court as well."
>
> "Now, at no time will either the Government through Mr. Donnelly, either in writing or verbally; or the Probation Department in the pre-sentence report or any other way, tell me what the Government's recommendation is. The sentence that the Government would have recommended is, has been -- and I want confirmation of this -- written on a piece of paper, signed by Mr. Donnelly and by counsel, and placed in the envelope which has been sealed and marked as Exhibit A . . . .[2]"

---

[2] The prosecutor had not in fact signed the recommendation; however, after discussion, the defendants stated that this was not an issue.

. . . .

The court:  "Now, after having heard the argument and considered the written materials, I will then announce what I believe to be an appropriate sentence.  If that sentence requires no greater time committed than the  sentence that Mr. Donnelly would have recommended -- that is to say the sentence that's written on the piece of paper in Exhibit A -- then that will be the sentence.  If the sentence I propose exceeds Mr. Donnelly's recommendation, then I will either agree to reduce the sentence to the amount that Mr. Donnelly would have recommended; or I will say to the defendants, 'I'm sorry, but I am not going to reduce my sentence.'  At that point, each defendant has an option:  He may accept the sentence as I propose to impose it; or he may say, 'Well, under those circumstances, I want to withdraw my plea and go to trial.'  And the plea will be withdrawn and we will set up a trial."

"To put it in a brief way, what this procedure does is to assure the defendant that the defendant will be sentenced to no greater a sentence than what Mr. Donnelly would recommend, and it may be that his sentence would be less."

"Does everybody understand the procedure?  Would you, Mr. Elikann and you, Mr. Napolitano, consult your clients right now to make sure that they understand."

"(Counsel and the clients confer.)"

Mr. Elikann:  "Your Honor, we've completed discussing this with our clients."

The court:  "Mr. Elikann, your client understands?"

Mr. Elikann:  "Yes, Gerald Sylvia understands."

Later during the colloquy, the second judge inquired whether "any court employee, anybody in the courtroom, courthouse, or me even, promised you or told you that I will for sure impose a particular sentence," to which the defendant responded, "No."

After completing the colloquy, and accepting the defendant's change of plea to each indictment, the second judge sentenced the defendant (on the armed robbery indictment) to a conditional sentence of five years to five years and a day and stated, "[T]his is a conditional sentence.  I may go up, I may go down.  It's just a number at this time."

The second judge conducted the sentencing hearing approximately two months later.  At its conclusion, the second judge imposed a sentence which, for ease of reference, we place in the margin alongside the sealed recommendation made by the Commonwealth.[3]  During the sentencing hearing, the second judge

---

[3] Armed robbery (statutory maximum of life in State prison). Sentence:  five years of probation with conditions. Commonwealth's recommendation:  ten to fifteen years in State prison.

Armed assault in a dwelling  (statutory minimum of ten years in State prison, up to life).  Sentence:  not less than ten years in State prison nor more than ten years and a day. Commonwealth's recommendation:  five years of probation with conditions.

Possession of a firearm (statutory minimum of two and one-half years in State prison, maximum of five years).  Sentence: not less than two and one-half years in State prison nor more than three years, concurrent.  Commonwealth's recommendation: two and one-half to five years in State prison, concurrent.

Armed career criminal (statutory range of three to fifteen years in State prison).  Sentence:  not less than ten years in State prison nor more than ten years and one day, concurrent. Commonwealth's recommendation:  three to five years in State prison, concurrent.

did not repeat that the defendant could withdraw his plea should the sentence exceed the Commonwealth's recommendation.

Discussion.  We begin by noting that the defendant, who until oral argument was proceeding pro se, has raised some issues on appeal that were not raised below and did not use the appropriate procedural mechanism for some of the issues he raised below.  That said, because the issues have been fully briefed and they raise purely questions of law given that the facts are undisputed, and in the interests of efficiency,[4] we exercise our discretion to reach the merits.

1.  Knowing and Voluntary Nature of Plea.  The defendant contends that his plea was not knowing and voluntary in three respects.  His first claim is that he was not adequately informed that he could withdraw his plea should the sentence exceed the Commonwealth's recommendation.  Second, he argues that he tendered his plea based on a sentencing "agreement" with the first judge that was "breached."  Third, he argues that there was insufficient evidence presented to the grand jury to

---

Possession of marijuana with intent to distribution (statutory maximum of two and one-half years in the house of correction).  Sentence:  five years of probation with conditions.  Commonwealth's recommendation:  five years of probation.

[4] Were we not to reach them here, the defendant's arguments could be raised anew in a motion to withdraw plea and for new trial.

permit them to find probable cause that he had committed an armed assault in a dwelling. Each of these arguments fails.

Rule 12 of the Massachusetts Rules of Criminal Procedure sets out the procedures governing the tender and withdrawal of pleas.[5] "If there were sentence recommendations contingent upon the tender of [a] plea," rule 12(c)(2)(A), as in effect at the time, required that the judge "inform the defendant that the court will not impose a sentence that exceeds the terms of the recommendation without first giving the defendant the right to withdraw the plea." See Commonwealth v. Goodwin, 458 Mass. 11, 20 (2010) (Rule 12[c][2] applies where "a guilty plea is tendered in return for, and contingent on, a sentence recommendation"); Commonwealth v. Johnson, 11 Mass. App. Ct. 835, 842 (1981) (Rule 12[c][2] applies only where plea is contingent upon sentencing agreement); Commonwealth v. Katsirubis, 45 Mass. App. Ct. 132, 138 (1998) (where record does not disclose existence of a plea agreement, defendant cannot maintain argument that judge failed to advise him of right to withdraw plea). Here, the defendant's guilty plea was not contingent upon a plea agreement with the prosecutor and,

---

[5] Because this is a Superior Court case, it is not governed in addition by G. L. c. 278, § 18, which applies to the District, Boston Municipal, and Juvenile Court departments. See Charbonneau v. Presiding Justice of the Holyoke Div. of the Dist. Ct. Dept., 473 Mass. 515, 518 (2016).

therefore, he was not entitled to the benefit of rule 12(c)(2)(A).

Strictly viewed, the second judge departed from the requirements of the rule by extending a benefit to the defendant to which he was not entitled.  But deviations from the rule do not automatically entitle a defendant to withdraw his plea. "The real issue in cases like the present one is whether a waiver was knowingly and voluntarily made.  Thus, while compliance with the procedures set out in rule 12(c) is mandatory, adherence to or departure from them is but one factor to be considered in resolving the issue."  Commonwealth v. Johnson, supra at 841 (citations and quotation marks omitted). See Commonwealth v. Barry, 19 Mass. App. Ct. 995, 996 (1985); Commonwealth v. Clerico, 35 Mass. App. Ct. 407, 413 (1993). Here, unlike in other cases, the second judge's departure from rule 12 resulted in the defendant receiving more procedural protection during the plea colloquy than he was entitled to under the rule.  The extra procedural protection does not cast in doubt the voluntary or knowing nature of the plea.

What remains to consider, therefore, is whether -- having given the defendant a benefit to which he was not entitled during the plea colloquy (i.e., the ability to withdraw his plea even though it was not contingent upon a sentencing recommendation) -- the second judge was required to repeat it

during the sentencing hearing.  The defendant points to two facts that support his argument in this regard.  First, a significant amount of time passed between the plea colloquy and the sentencing hearing such that repetition was in order. Second, the defendant could not have withdrawn his plea until he knew both the second judge's sentence and the Commonwealth's recommendation.  Thus, he argues, the rule 12(c)(2)(A) right was meaningless when given and absent when the time was ripe.

Even accepting the defendant's argument, however, he does not argue that the second judge's sentence exceeded that recommended by the prosecutor, because the prosecutor sought a ten to fifteen year sentence, while the defendant received a sentence of ten years to ten years and one day.[6]  In light of the defendant's failure to argue any harm, we cannot conclude that the motion judge abused his discretion in denying the defendant's motion to be released from unlawful restraint.  See Commonwealth v. Sherman, 451 Mass. 332, 342 (2008) (defendant not entitled to withdraw plea where deviation from rule 12 did no harm to him).

The record does not support the defendant's argument that he had an "agreement" with the first judge that was "breached."

---

[6] Consequently, we need not address whether the proper unit for determining whether a sentence exceeds a recommendation is the overall sentence or the sentence on each individual count.

"[P]lea bargaining is often analogized to a contractual negotiation.  However, no contract could have been made in the instant circumstances because . . . the judge did not participate in the plea bargaining process."  Commonwealth v. Kelleher, 28 Mass. App. Ct. 915, 916 (1989) (citation and quotation marks omitted).  Although the first judge expressed her view, during a pretrial conference, of the sentencing range she would consider if the defendant changed his plea, that statement was informational in nature and did not amount to a binding agreement.  To begin with, it is doubtful "that a judge, as opposed to a prosecutor, could ever be held to a contract to accept a particular plea offer.  A judge would have discretion to change his or her mind until the plea was accepted."  Id. at 916-917 n.5.  See Commonwealth v. Rodriguez, 461 Mass. 256, 261-262 (2012).  In addition, even if we were to view the first judge's comment as a form of contractual offer, the defendant did not accept it by changing his plea.

Finally, there was no error in denying the defendant's motion to be released from unlawful restraint based on his claim that the evidence before the grand jury was insufficient to permit the grand jury to determine that his entry into the victim's apartment was unlawful.  "By pleading guilty the defendant admitted all facts well charged in the indictments against him," Commonwealth v. Zion, 359 Mass. 559, 563 (1971),

and "waive[d] all nonjurisdictional defects." Commonwealth v. Cabrera, 449 Mass. 825, 830 (2007). Even were this not the case, the evidence before the grand jury was sufficient to permit the inference that, although the victim may have consented to the defendant's entry, that consent was "legally [in]significant [because] the occupant [was not] made aware [that] the person at the door [was] armed with a dangerous weapon and [was] about to commit an assault once inside." Commonwealth v. Maher, 430 Mass. 643, 652-653 (2000).[7]

2. Armed Career Criminal. The defendant was charged with possession of a firearm, G. L. c. 269, § 10(a), and in a separate indictment, with being an armed career criminal, G. L. c. 269, § 10G(a). The second judge sentenced the defendant to two and one-half to three years on the firearm charge, and to ten years to ten years and one day on the armed career criminal charge, both to run concurrently with the sentence imposed for the armed assault in a dwelling. The defendant argues that, because there is no freestanding crime of being an armed career criminal, he should not have been sentenced separately for it.

The armed career criminal statute "does not define a stand-alone, separate offense. Rather, the repeat offender statute establishes sentencing enhancements for offenders who, 'having

---

[7] For this reason, the defendant has failed to establish that his attorney was ineffective for failing to seek to dismiss the indictment.

been previously convicted of two violent crimes, or two serious drug offenses or one violent crime and one serious drug offense,' commit certain firearms offenses, including those prohibited by [G. L. c. 269,] § 10(a) and (h).  See Commonwealth v. Fernandes, 430 Mass. 517, 520-521 (1999), cert. denied sub nom. Martinez v. Massachusetts, 530 U.S. 1281 (2000) (repeat offender sentencing enhancement does not constitute 'freestanding crime'; 'the counts for the current offense and for the repeat offense are viewed as parts of one indictment and charge only one crime with a sentencing enhancement provision')."  Alicea v. Commonwealth, 466 Mass. 228, 230-231 n.6 (2013).  It follows that the defendant should have received only a single sentence on the underlying firearm offense, enhanced as provided by the career criminal statute.  See Bynum v. Commonwealth, 429 Mass. 705, 708-709 (1999).  Separate sentences should not have been imposed.

Because the defendant pleaded guilty to the armed career enhancement, which included admitting the facts necessary to satisfy its application, we consider the simplest way to correct the error is to remand the matter to the Superior Court to implement the procedure followed in Commonwealth v. Miranda, 441 Mass. at 787-790 (2004).  Accordingly, the orders entered on July 11, 2013, and May 22, 2014, with respect to the indictments charging the defendant with armed robbery, armed assault in a

dwelling with the use of a firearm, and possession of marijuana with the intent to distribute, are affirmed, and as to the remaining two indictments, the matter is remanded to Superior Court, where the possession of a firearm indictment is to be amended to include the armed career criminal indictment, the latter indictment is to be dismissed, and the defendant is to be resentenced on the former indictment as so amended.  See Commonwealth v. Owen, 61 Mass. App. Ct. 711, 715 (2004).  This is a "proper way to correct the Commonwealth's mistake to avoid possible problems for the defendant if it appeared that he was convicted of two separate offenses."  Commonwealth v. Miranda, 441 Mass. at 789-790.

So ordered.