COMMONWEALTH vs. MIGUEL DILONE.

Essex. November 3, 1981. — February 16, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Evidence*, Admissions and confessions, Reputation. *Practice, Criminal*, Indictment, Grand jury proceeding, Plea, Directed verdict, Comment by prosecutor, Instructions to jury, Capital case. *Homicide.*

On appeal from the denial of a motion to suppress statements by a criminal defendant to Massachusetts police officers on the ground that Federal agents who had questioned him previously had failed to warn him of his rights and had misled him as to the significance of his statements to them, this court accepted the judge's conclusions that the statements to Massachusetts police had not been the result of improper conduct by the Federal agents, that the defendant had received Miranda warnings from the Massachusetts police, and that he had voluntarily waived his rights. [283]

In the circumstances, there was no defect in a grand jury proceeding requiring dismissal of an indictment for murder. [284]

At a murder trial, the judge did not abuse his discretion under Mass. R. Crim. P. 12 (a) (2), 378 Mass. 866 (1979), in rejecting the defendant's offer to plead guilty to manslaughter to which the prosecution had agreed, even if, on the record, the judge could have been satisfied that there was a factual basis for the guilty plea. [284-285]

At a murder trial, the testimony of two defense witnesses relating to the victim's reputation for being quarrelsome and aggressive, offered by the defendant in support of his claim of self-defense, was properly excluded where the essential foundation for its admission was not established at the time the evidence was offered, where the defendant did not renew his offer after testifying that he knew of the victim's reputation for being a quarrelsome and violent person, where the defendant had not sought to have the testimony admitted, in the judge's discretion, subject to being supported by anticipated testimony concerning the defendant's knowledge of that reputation, and where the judge's instruction adequately presented the defendant's knowledge of the victim's reputation to the jury. [285-286]

At a murder trial, evidence of the defendant's statement to the police and the testimony of certain witnesses was sufficient to create a jury question as to the defendant's guilt and to warrant the denial of the defendant's motion for a required finding of not guilty. [286]

At a murder trial, evidence that the defendant had spent the balance of one night at the residence of a female defense witness, after other guests had left a party at her residence, justified the prosecutor's argument to the jury that they consider her relationship to the defendant in considering her testimony. [286]

At a murder trial, there was no merit to a defendant's objection that part of a judge's instruction to the jury on self-defense, copies of which had been furnished the jury without objection by the defendant, was in smaller print than was the balance of the charge given the jury. [287]

At a murder trial, a judge's instructions on accident and the Commonwealth's burden to prove beyond a reasonable doubt that there was no accident were proper. [287]

At a murder trial, there was no reversible error in certain instructions to the jury to which the defendant made no objection. [287-288]


INDICTMENT found and returned in the Superior Court Department on February 12, 1979.

The case was tried before *Garrity*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Michael T. Stella, Jr.*, for the defendant.

*Dyanne Klein Polatin*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant appeals from his conviction of murder in the second degree of Miguel A. Frometa.   He raises numerous claims of error and seeks under G. L. c. 278, § 33E, a new trial or, alternatively, that we direct that the degree of guilt be reduced to manslaughter.   There are no grounds for reversal of the conviction.   The record does not warrant our ordering under § 33E either a new trial or a reduction in the degree of guilt.

Frometa was shot shortly after 5 P.M. on September 22, 1978, in La Bahia Restaurant in Lawrence.   There was evidence that earlier in the day the defendant and the victim had had an argument at the restaurant.   Thereafter the defendant obtained a shotgun, returned to the restaurant, confronted the victim, and, during a struggle, shot him.

The defendant fled and, on January 18, 1979, surrendered at an office of the FBI in San Francisco.

A Massachusetts State police detective lieutenant and a lieutenant in the Lawrence police department interviewed the defendant in San Francisco on January 31, 1979. We summarize a statement the defendant gave to these police officers. The defendant admitted having had an earlier altercation with the victim in the restaurant. He said that he then obtained a shotgun and returned to the restaurant with it. He never saw a gun in the victim's hand. While he was pointing the gun at the victim, the victim jumped at him and the gun went off. The defendant said that after he shot the victim he ran out of the restaurant.

At the trial there was evidence that the defendant shot the victim, not during their struggle, but while the victim was crouched or lying on the floor of the restaurant several feet from the defendant. There was also evidence that one Caba unsuccessfully tried to stop the defendant from using the gun. No weapon was found on or near the victim.

1. The defendant moved to suppress the statement he gave in San Francisco to the two Massachusetts police officers. The defendant argued that he only made this statement because FBI agents had not advised him of his Miranda rights when he turned himself in and, accordingly, he had made incriminating statements to them. He also claimed that the FBI agents assured him that he had nothing to worry about if he told the Massachusetts police what he had told the FBI agents. The judge, in denying the motion to suppress, simply disbelieved the defendant's testimony that the FBI agents had acted improperly. We find no error in that conclusion. *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980). The Massachusetts police knew nothing about the nature of any statements made to the FBI agents and gave the defendant appropriate warnings before questioning him. We accept the judge's finding that the defendant understood those warnings and voluntarily waived his rights. There are no circumstances here to warrant suppression of the statement.

2. After trial commenced, the defendant moved to challenge the grand jury proceedings on the ground that the evidence presented to the grand jury was insufficient to justify the indictment. He claimed the evidence submitted to the grand jury was entirely hearsay and conclusions of the investigating officer. He also argued that the presentation prejudiced the grand jury against him. The motion to dismiss was not seasonably filed (see Mass. R. Crim. P. 13 [d] [2] [A], 378 Mass. 871 [1979]), but in his discretion the judge elected to pass on it.

There was no defect in the grand jury presentation requiring the indictment to be dismissed. A summary of the defendant's statement made in San Francisco was before the jury and, standing alone, it went a long way (perhaps all the way) toward justifying the indictment. Hearsay alone would, in any event, support an indictment. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655 (1979). Minor discrepancies, if there were any, between the evidence presented to the grand jury and the evidence presented, or expected to be presented, at trial cannot invalidate the indictment. The claim that the prosecutor and the police investigator who testified deceived the grand jury or gave it "shoddy merchandise" is simply not supported on the record. The integrity of the grand jury proceedings was not impaired. See *Commonwealth* v. *St. Pierre, supra*; *Commonwealth* v. *Gibson*, 368 Mass. 518, 525 (1975). Contrast *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982).

3. At the commencement of the second day of trial, before the testimony of the first witness for the prosecution had concluded, the defendant offered to plead guilty to manslaughter. The prosecution agreed to the change of plea. The defendant then testified under oath before the judge. Among other things, he said he did not kill the victim, he did not point the gun at him, and he did not know how the shotgun went off.

Under Mass. R. Crim. P. 12 (a) (2), 378 Mass. 866 (1979), a "judge may refuse to accept a plea of guilty." Massachusetts R. Crim. P. 12 (c) (5) (A), 378 Mass. 866 (1979), pro-

vides that a "judge shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the charge. The failure of the defendant to acknowledge all of the elements of the factual basis shall not preclude a judge from accepting a guilty plea." Although there is a constitutional right simultaneously to plead guilty and to protest innocence (*North Carolina* v. *Alford,* 400 U.S. 25, 37 [1970]), there is no constitutional right to have the plea accepted. The matter is wholly discretionary with the judge. *Santobello* v. *New York,* 404 U.S. 257, 262 (1971).

There was no abuse of discretion in rejecting the plea. We say this even if, on the record, the judge could have been satisfied that there was a factual basis for the guilty plea. The fact that this judge had a practice of not accepting an *Alford* plea (a plea of guilty by one maintaining his innocence), while other judges might have accepted such a plea, provides the defendant with no appellate issue.

4. In support of his claim of self-defense, the defendant sought to introduce the testimony of two witnesses relating to the victim's reputation for being quarrelsome and aggressive. The judge excluded the evidence. Where self-defense is raised as an issue, the defendant is entitled to offer evidence tending to show that the victim had a reputation of being violent or quarrelsome if the defendant knew of that reputation. See *Commonwealth* v. *Gibson,* 368 Mass. 518, 526 (1975); *Commonwealth* v. *Edmonds,* 365 Mass. 496, 502-504 (1974). Here, at the time the evidence was offered, there was no evidence of the essential foundation for admission of the evidence, namely, evidence of the defendant's knowledge of the victim's reputation for being violent or quarrelsome. *Commonwealth* v. *Gibson, supra* at 527. The defendant did not renew his offer of this reputation evidence after he testified that he knew of the victim's reputation for being a quarrelsome and violent person. Nor did he seek to have the witnesses' testimony admitted, in the judge's discretion, subject to being supported by anticipated testimony concerning the defendant's knowledge of that reputation. See *Commonwealth* v. *Pimental,* 5 Mass. App.

Ct. 463, App. 469-470 (1977). There was no error. The judge's charge adequately presented the defendant's knowledge of the victim's reputation to the jury for their consideration.[1]

5. The evidence did not require the judge to grant the defendant's motion for a required finding of not guilty, presented at the close of the Commonwealth's case and renewed at the close of all the evidence. The defendant's statement and the testimony of certain witnesses were sufficient to create a jury question. Indeed, the defendant grants this is so in his brief before us, but he argues that the testimony of certain witnesses was so incredible as to require a finding of not guilty. He argues that this incredible evidence should have been disregarded in its entirety in deciding his motion for a required finding of not guilty. However, the matter of credibility is not for the judge, except perhaps in an extreme situation. Thus, in passing on a motion for a required finding of not guilty, "issues of credibility [are] assumed to be resolved within reason for the Commonwealth." *Commonwealth* v. *Medina*, 380 Mass. 565, 573 (1980). The evidence made the question of the defendant's guilt appropriately one for the jury. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979).

6. Evidence that the defendant had spent the balance of one night at the residence of a female defense witness, after other guests had left a party at her residence, justified the prosecutor's argument to the jury that they consider her relationship to the defendant in considering her testimony. See *Leone* v. *Doran*, 363 Mass. 1, 18 (1973).

7. The defendant has advanced numerous challenges to aspects of the judge's charge to the jury. We consider first

---

[1] Rule 404 of the Fed. R. Evid. allows the admission of "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused." Rule 404 of the Proposed Mass. R. Evid. (July, 1980) has no parallel provision, and, as the advisory committee's notes indicate, the intention is to permit evidence of a victim's reputation to be admitted, where the issue of self-defense is raised, only if the defendant has knowledge of the reputation.

those issues that have been properly preserved for appellate review and turn then to those questions that are before us only for our special consideration under G. L. c. 278, § 33E.

During the judge's charge, a juror inquired if the jury were to have copies of a portion of the charge which the judge had just read to the jury.[2] The defendant had no objection to furnishing copies of that portion of the charge to the jury. He did object that the part of the charge on self-defense was in smaller print than was the balance of the charge given to the jury. The objection is insubstantial, particularly because the self-defense instruction was dramatized by being set forth in the margin of what was given to the jury.

The judge's instructions on accident were adequate. There was no need to define an accident in the circumstances. He properly placed the burden on the Commonwealth to prove beyond a reasonable doubt that there was no accident. The defendant's challenge to the charge in this respect is an insignificant semantic objection. It does not matter whether a judge says that the Commonwealth must prove beyond a reasonable doubt that there was no accident or whether he says that the Commonwealth must disprove accident beyond a reasonable doubt.[3]

We now consider asserted errors in the judge's charge to which the defendant made no objection at trial, but we do so only under G. L. c. 278, § 33E, to determine whether justice requires the reversal of the conviction. See *Commonwealth* v. *Cole*, 380 Mass. 30, 38 (1980). (a) The

---

[2] We would endorse any reasonable procedure by which all or portions of a judge's charge agreed to by the parties are made available in writing to a jury.

[3] The defendant does not argue that the judge charged the jury that there was no accident. A portion of the charge (Tr. 898) could be so read as punctuated by the stenographer. The absence of any objection on this ground at trial or before us is persuasive that either there is a word omitted from the transcript or that the punctuation by the stenographer is inappropriate.

judge's charge on the credibility of witnesses was correct and substantially followed a request filed by the defendant. See *Lannon* v. *Commonwealth,* 379 Mass. 786, 792 (1980). (b) The failure of the judge to list accidental homicide as a lawful homicide on a chart he gave the jury to aid them in understanding his charge does not require reversal. The defendant raised no objection, and the charge explicitly advised the jury that if the death was accidental, it would be a lawful homicide. (c) The judge's charge on reasonable provocation was adequate when tested by the standard we apply under G. L. c. 278, § 33E. If the defendant wanted an explicit charge defining reasonable provocation and stating that the Commonwealth had the burden of proving the absence of reasonable provocation beyond a reasonable doubt, he should have objected to its omission. The appropriate principle concerning the burden of proof was well established at the time of trial. *Commonwealth* v. *Stokes,* 374 Mass. 583, 592 (1978). The burden of proof on reasonable provocation was implicitly covered in the judge's charge. Moreover, the charge gave an adequate description of what reasonable provocation was. (d) The defendant objects to the judge's failure to give any instruction as to how the jury should treat evidence of the defendant's "reputation in regard to the elements of character involved in the commission of the crime charged against him." The weight to be given to reputation evidence is for the jury along with all the other evidence in the case, and such evidence could create a reasonable doubt in the minds of the jurors. See *Commonwealth* v. *Simmons,* 383 Mass. 40, 42 (1981); *Commonwealth* v. *Wilson,* 152 Mass. 12, 14 (1890); *Commonwealth* v. *Leonard,* 140 Mass. 473, 480 (1886). Although the exclusion of such evidence might be improper (see *Commonwealth* v. *Belton,* 352 Mass. 263, 268-269 [1967]), we have never held that failure to give an instruction concerning reputation evidence is reversible error. The case of *Commonwealth* v. *Wilson, supra,* should not be construed as mandating such an instruction. That opinion simply sets forth the nature of an instruction on reputation that should be

given, if one is given at all. *Commonwealth* v. *Simmons,* *supra.* While such an instruction is often appropriate and is often given, a judge would not normally be required to advert to this particular portion of the evidence if the jury instructions generally advise the jury to consider all the evidence and properly deal with the Commonwealth's burden of proof. In the case before us, although the defendant filed requests for instructions concerning evidence of his reputation, he did not object to the omission of such an instruction at the conclusion of the judge's charge. We find no grave prejudice or denial of essential justice in the omission of such a charge.

8. We see no justification under § 33E for ordering a new trial or for reducing the degree of guilt to manslaughter. See *Commonwealth* v. *Jones,* 366 Mass. 805, 809 (1975).

*Judgment affirmed.*