COMMONWEALTH *vs.* ANGEL A. ADORNO.

Plymouth. March 6, 1990. - May 15, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Speedy trial. *Evidence,*
Presumptions and burden of proof. *Insanity.*

At a murder trial, the judge's instructions to the jury, viewed in their en-
tirety, did not impermissibly shift the burden of proof with regard to
the issues of criminal responsibility and diminished capacity, or confuse
the jury on the quantum of proof necessary to support a conviction.
[430-432]

The record of a criminal proceeding did not support the defendant's con-
tention, raised for the first time on appeal, that the indictments against
him should be dismissed for the Commonwealth's failure to bring him
to trial within the time limits specified in Mass. R. Crim. P. 36 (b), 378
Mass. 909 (1979). [432]

INDICTMENT found and returned in the Superior Court De-
partment on May 15, 1984.

The case was tried before *Augustus F. Wagner, Jr.,* J.

*Charles K. Stephenson* for the defendant.

*Linda M. Fleming,* Assistant District Attorney, for the
Commonwealth.

LYNCH, J. The defendant, Angel A. Adorno, appeals from
his conviction of murder in the first degree (by reason of de-
liberate premeditation and extreme atrocity or cruelty)[1]
claiming that the judge's instructions to the jury were defi-
cient because they misplaced the burden of proof on the is-
sues of criminal responsibility and diminished capacity. The
defendant also claims that the indictments against him

---

[1]The defendant was also convicted on two indictments charging counts
of assault by means of a dangerous weapon. The guilty verdicts on the
assault charges were placed on file.

should be dismissed because the Commonwealth failed to bring him to trial within the time limits specified in Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979). In addition, the defendant contends that we should reduce his conviction to murder in the second degree pursuant to our extraordinary power under G. L. c. 278, § 33E (1988 ed.). We affirm the conviction and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

The evidence at trial indicated that, during the week prior to April 20, the defendant had argued with his girl friend, the victim's sister, who then left the State. The defendant became depressed and contemplated suicide. On April 20, 1984, the defendant took a knife from his sister's kitchen and put it in his back pants pocket. That evening, sometime before 8 P.M., he went to the apartment of the victim's mother in the hope that he might be able to speak to his girl friend when she telephoned from New York.

Shortly after arriving at the apartment, the defendant became involved in an argument with the victim and her mother. The victim left the apartment, and the defendant followed her. In the course of an exchange between the two, the defendant stabbed the victim in the back and ran from the scene after threatening two witnesses. The knife punctured the victim's heart and she died shortly thereafter.

The defendant claimed that he only remembered leaving the apartment with the victim and speaking with her. His next memory was that of standing on the roof of the automobile supply store where he was apprehended by the police.

The defendant testified that in July, 1983, he had suffered a head injury in an automobile accident, and that he had subsequently suffered numerous blackouts. There was conflicting expert testimony at the trial concerning the defendant's mental state. The psychiatrist testifying on behalf of the defendant opined that the defendant lacked criminal responsibility and the capacity to premeditate.

The Commonwealth's psychiatric witness disagreed and stated his opinion that the defendant had never suffered an acute period of depression as was claimed and that the de-

fendant would not be capable of a purposeful activity, such as stabbing the victim and fleeing from the scene, in the midst of a partial seizure.

1. *The burden of proof.* The defendant claims that the judge's instructions to the jury impermissibly shifted the burden of proof to the defense with regard to the issues of criminal responsibility and diminished capacity. The defendant relies on numerous instances in the course of the judge's instructions where he used the phrase "[i]f you find," or "[y]ou must find," or "[i]f you were to find." This court has recognized that such language may improperly imply that the defendant has the burden of proof on the issue and also fails to "describe precisely what degree of persuasion is required." *Connolly* v. *Commonwealth*, 377 Mass. 527, 534 (1979). See *Commonwealth* v. *Richards*, 384 Mass. 396, 405 (1981); *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 691 (1976).

Because defense counsel did not object, we review the alleged error pursuant to G. L. c. 278, § 33E, solely to determine whether it created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Callahan*, 401 Mass. 627, 631 (1988). In so doing, we are guided by the principle that we must view the instructions "in their entirety, to determine the 'probable impact, appraised realistically . . . upon the jury's factfinding function.' " *Commonwealth* v. *Richards*, *supra* at 399-400, quoting *United States* v. *Wharton*, 433 F.2d 451, 457 (D.C. Cir. 1970).

Viewing the instructions in their entirety, we conclude that the judge's instructions did not impermissibly shift the burden of proof or confuse the jury on the quantum of proof necessary to support a conviction. Crucial to our determination is the fact that the judge began his instructions on these issues with the admonition that the Commonwealth had to show the presence of criminal responsibility and the absense of diminished capacity beyond a reasonable doubt. Furthermore he repeated this admonition in unequivocal language frequently throughout his discussion of these issues on sev-

eral separate occasions. At one point, for example, the judge instructed the jury:

> "You should note though that the test depends upon the existence of a mental disease or defect. At the outset, if you are satisfied beyond a reasonable doubt that there was no mental disease or defect, then you are not involved with criminal responsibility. It is not part of your decision-making process. If you find as a fact that the defendant had no such disease, and you are satisfied beyond a reasonable doubt that the Commonwealth has proven all of the elements beyond a reasonable doubt as to the crimes charged or lesser included crimes, you must find the defendant guilty. Under those circumstances, it would not be a question of criminal responsibility. If you are satisfied beyond a reasonable doubt that there was no mental disease or defect, then you are not concerned with criminal responsibility. If you find that the defendant had a mental disease or defect, but that despite such mental disease or defect he had substantial capacity to appreciate the criminality of his conduct and had the substantial capacity to conform his conduct to the requirements of the law, you would be warranted in returning verdicts of guilty provided that the Commonwealth has proven beyond a reasonable doubt all of the elements here necessary for the proof of the crimes themselves."

Further on, when addressing the issue of diminished capacity, the judge charged:

> "And again the Commonwealth must prove this beyond a reasonable doubt, that such is not the case as to whether such mental disease or defect affected to a substantial extent the point where the defendant could not deliberately premeditate or could not appreciate that the acts were extremely cruel or atrocious."

Taken in context the judge's charge did not misinform the jury as to the burden or quantum of proof necessary for a conviction. Cf. *Commonwealth* v. *Simmons*, 383 Mass. 40, 44 (1981) (judge's finding language did not result in error in light of his specific and unequivocal instructions regarding the Commonwealth's burden to show absense of self-defense).

2. *Mass. R. Crim. P. 36 (b)*. The defendant raises a claim that the indictments against him should be dismissed because the Commonwealth failed to bring him to trial within the time limits specified in rule 36 (b). He also claims that the trial counsel's failure to raise this issue at trial deprived him of his right to effective assistance of counsel. The defendant raises these claims for the first time on appeal. As in the past, we decline to consider their merit. *Commonwealth* v. *Haas*, 398 Mass. 806, 816 n.10 (1986), and cases cited. We note, however, that the record fails to show that the defendant ever objected on speedy trial grounds to any continuance. The rule is not to be read to relieve defendants of the obligation to press their case through the criminal justice system. The public interest in bringing guilty persons to trial is not to be thwarted by defense counsel who decide that delay is the best defense tactic. *Barry* v. *Commonwealth*, 390 Mass. 285, 296-297 (1983).

3. *Review under G. L. c. 278, § 33E*. The defendant contends that we should exercise our power to reduce his conviction to murder in the second degree. As a basis for this contention, the defendant repeats the claim, rejected above, that the judge's use of finding language impermissibly shifted the burden of proof. In addition, the defendant asserts that the jury instruction regarding diminished capacity lacked clarity and failed to follow the standard set forth in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980). He also points to the evidence that he was emotionally and mentally unstable at the time of the killing.

We find no merit in the defendant's claim that the judge's instruction regarding diminished capacity failed to follow *Gould*. *Gould* requires that the judge instruct the jury that

they may consider the effect that the defendant's mental disease or defect may have had on either his ability to premeditate the crime, or his ability to appreciate the extreme atrocity or cruelty of his act. *Id.* at 686 n.16. The judge gave such an instruction and then reiterated and clarified it twice for the jury.

Furthermore, as to the defendant's factual assertion that he was emotionally and mentally unstable at the time of the killing, we find that the jury were fully instructed on the criminal responsibility defense as well as the diminished capacity defense.

For these reasons, we decline to exercise our authority under G. L. c. 278, § 33E.

*Judgment affirmed.*